IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| TAMARA CAPUTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1214 |
| | ) | |
| LUTHERAN SOCIAL SERVICES OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

Plaintiff, TAMARA CAPUTO, by and through her attorneys, JULIE L. GALASSI, MELINDA L. MANNLEIN, and BRYANT S. LOWE of HASSELBERG, ROCK, BELL & KUPPLER, LLP, state the following for her COMPLAINT:

## PARTIES

1.    Plaintiff, Tamara Caputo ("Caputo"), resides in Canton, Illinois.

2.    Defendant, Lutheran Social Services of Illinois ("Lutheran"), is an Illinois Not-For-Profit Corporation operating in the counties of the Peoria Division of the Central District.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction of this matter pursuant to Title 42 U.S.C. 12111, *et seq.*

4.    The Central District of Illinois is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because the Defendant resides in and the

1

events giving rise to Plaintiff's claims occurred in the Central District of Illinois, Peoria Division.

5.      Caputo received a Right to Sue letter on March 7, 2023.

## FACTUAL ALLEGATIONS

6.      Caputo has Ehlers-Danlos Syndrome. This condition prevents Caputo from making collagen correctly which then can lead to injury, long healing times, or not healing properly, if at all.

7.      Caputo tore an Achilles tendon in March of 2020 and thereafter had been in and out of various plaster or inflated casting systems. Caputo's casts prevented Caputo from driving.

8.      Prior to Caputo's first day of work the week of August 10, 2020, Caputo had disclosed to Lutheran the nature of her medical condition.

9.      Caputo was hired as a Supervisor of case workers and was not hired to perform the duties of a case worker which involved, in part, driving to foster parent's homes.

10.     During Caputo's first week of employment, she was tasked by Director Parry an investigation over a Foster Parent Hot Line report concerning case worker "Jane", even though the acting higher up supervisor should have undertaken the job. Caputo had been tasked with building a cohesive team of case workers in the Lutheran Canton office but had not yet been given

2

supervisory authority over the office's case workers; she was not familiar with Jane, the office policies and expectations, or state regulations, as the acting supervisor was.

11.    Jane had boasted on social media that the office had a long running gambit of collecting a full wage while doing none of the work their job required.

12.    As of August 2020, Jane had not visited with foster families, or birth families, for up to 8 months at a time and had not provided visitation opportunities for deserving families in the system with visitation rights.

13.    Jane abused her power by removing children from homes unnecessarily and was known to often use profanity towards clients (children), their relations (birth families) as well as Lutheran's network of foster parents.

14.    Jane threatened foster parents and birth parents, causing the loss of foster facilities and resources from future consideration. Some foster family locations would refuse a placement of a child if Jane was the case worker.

15.    Parry admitted Jane's behavior alone was responsible for loss of good foster homes and that she was fully aware of the validity of the Hot Line complaints against Jane.

16.    Jane responded to the investigation with abusive and harassing

3

phone calls to Caputo.

17.    A meeting was instigated by Caputo with HR Director Pearce, Director Parry, Caputo and Jane to address Jane's insubordinate behavior. Jane attacked the meeting attendees and screamed at them. Lutheran took no action to address Jane's performance problems or her insubordinate behavior.

18.    Following the meeting, Jane and a few other case workers consistently and collectively refused to turn in time sheets and assignments for new cases, all against Lutheran's policies.

19.    Director Parry then ordered Caputo to do the work of the case workers who refused to work their cases or accept new assignments. Caputo was medically restricted from driving.

20.    Jane's subpar performance continued. Jane ignored a case for two months, failed to arrange for a family visitation for approximately several months, without cause threatened to remove children from their home, and was reported by foster parents for verbal abuse. Parry and another supervisor, Murry, did not dispute Jane's actions.

21.    Jane continued to make abusive phone calls, texts, and emails to Caputo. Caputo turned the communications into HR. HR took no action to address the problem.

22.    Jane initiated a weekly "Bitch Session" inviting all non-supervisory employees in the office to attend so they could share complaints about Caputo.

23.    Jane turned in a list of false complaints about Caputo to Lutheran's directors, including the accusation that Caputo's Achilles tendon injury was fraudulent.

24.    HR Director Pearce demanded Caputo produce proof of her injury and medical condition which Caputo promptly provided.

25.    As of August 17, 2020, Caputo was still in training and had not received her Illinois license yet. Parry ordered Caputo to work remotely for two weeks except for Friday mornings per Lutheran's Covid policy. Parry directed Caputo to concentrate on training and let the "office slide", inferring Parry would attend to supervisory duties.

26.    Jane submitted a list of false complaints about Caputo to Lutheran's directors. Despite Lutheran's prior acknowledgement of Jane's inappropriate behavior, Caputo was given a written warning.

27.    Despite being on the job for months, without reason, Parry denied Caputo access to certain computer programs and then reported Caputo was failing to perform her job duties.

28.    HR Director Pearce was to conduct a training session for

5

supervisors. Due to an internet problem, Caputo phoned in for the training so her presence was unknown to Pearce. Pearce instructed the supervisors "when an applicant or employee uses the words, 'disability accommodations' you must get HR and Legal involved immediately. All supervisors are responsible to make sure they hire people who can do the job. Don't hire someone, for example, who can't drive due to a broken foot when the job requires driving."

29.    As of October 2020, Caputo had still not been provided with a work area at the office.

30.    Caputo's request to work remotely had been granted in accordance with Lutheran's Covid policy, and Parry had told Caputo to limit her time at the office to Friday mornings. Regardless, Caputo was written up for not being in the office enough.

31.    Caputo was expected to enforce the standard COVID protocols as part of her job duties. Caputo observed the policy was being ignored and sent out reminder emails to staff. Caputo was instructed to cease sending reminders because it inhibited building a team. Afterward, she was given a written warning for not doing her job in supporting the Covid policies.

32.    On November 18, 2020, Caputo was suspended over the false allegation that she violated the COVID policy and had not completed some of her job duties.

33.    Staff members reported to Directors and Pearce that fellow co-workers were making derogatory comments about Caputo and her disability, which made them uncomfortable.

34.    While Caputo was attending a medical appointment known to Jane and her few allies, Caputo was phoned and/or texted by them 40 times. They then complained to Caputo's superiors that she was unresponsive to communications. Parry, Pearce, and Director Amy suspended Caputo for not responding to the communications.

35.    Caputo was later demoted from supervisor to case worker, a position that required her to drive, which she could not do with a cast on her foot.

36.    Lutheran refused to furnish a driver for Caputo to make home visits.

37.    Caputo was forced to give her resignation on December 1, 2020.

38.    Caputo suffered three cardiac episodes in the next few weeks which were attributed, in part, to the severe stress she endured at Lutheran.

### COUNT I
### CAPUTO'S CLAIM OF A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT VIA FAILURE TO ACCOMMODATE 42 U.S.C. 12111, *et seq.*

39.    Caputo re-alleges and incorporates allegations 1-38 into this Count.

40.    Caputo is a qualified individual with a disability as that term is defined under the ADA.

41.    Lutheran was aware of Caputo' disability.

42.    Lutheran failed to accommodate Caputo' disability.

43.    The actions by Lutheran and its agents described in this Complaint were motivated by animus toward Caputo's disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, TAMARA CAPUTO, respectfully requests that this Court enter judgment in her favor and against Defendant, LUTHERAN SOCIAL SERVICES OF ILLINOIS, and grant the following relief:

A.    Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

B.    Compensatory damages in an amount determined at trial of this matter;

C.    An award of Plaintiff's attorney fees, including legal expenses, and costs; and

D.    Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT II
### Caputo' Claim of a Violation of the Americans with Disabilities Act via Disparate Treatment
### 42 U.S.C. 12111, *et seq.*

44.    Caputo re-alleges and incorporates allegations 1-38 into this Count.

45.    Caputo had a disability as that term is defined under the ADA.

46.    Caputo could perform the essential functions of her job with reasonable accommodation.

47.    Caputo suffered at least the following adverse actions because of her disability:

      a.    She was demoted from a position she was able to perform despite her disability; and

      b.    She was constructively terminated.

48.    The actions by Lutheran and its agents described in this Complaint were motivated by animus toward Caputo's disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, TAMARA CAPUTO, respectfully requests that this Court enter judgment in her favor and against Defendant, LUTHERAN SOCIAL SERVICES OF ILLINOIS, and grant the following relief:

      A.    Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

      B.    Compensatory damages in an amount determined at trial of this matter;

      C.    An award of Plaintiff's attorney fees, including legal expenses, and costs; and

      D.    Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT III

### CAPUTO' CLAIM OF A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT VIA RETALIATION
### 42 U.S.C. 12111, *et seq.*

49.     Caputo re-alleges and incorporates allegations 1-38 into this Count.

50.     Caputo engaged in statutorily protected conduct in requesting two reasonable accommodations.

51.     Caputo suffered at least the following adverse actions because of this statutorily protected conduct:

      a.     She was demoted from a position she was able to perform despite her disability; and

      b.     She was constructively terminated.

52.     Caputo suffered the above-described adverse actions because she engaged in the above-described statutorily protected activity.

53.     The actions by Lutheran and its agents described in this Complaint were motivated by animus toward Caputo's statutorily protected activity and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, TAMARA CAPUTO, respectfully requests that this Court enter judgment in her favor and against Defendant, LUTHERAN SOCIAL SERVICES OF ILLINOIS, and grant the following relief:

      A.     Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

B.    An award of Plaintiff's attorney fees, including legal expenses, and

costs; and

C.    Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

TAMARA CAPUTO,
Plaintiff

BY:    */s/ Melinda L. Mannlein* _____
One of the Attorneys for Plaintiff

Julie L. Galassi, Esq., Bar No. 6198035
Melinda L. Mannlein, Esq., Bar No. 6288382
Bryan S. Lowe, Esq., Bar No. 6342267
Hasselberg, Rock, Bell & Kuppler, LLP
4600 N. Brandywine Drive, Suite 200
Peoria, Illinois 61614-5591
Telephone:    (309) 688-9400
Facsimile:    (309) 688-9430
Email:    jgalassi@hrbklaw.com
           mmannlein@hrbklaw.com
           blowe@hrbklaw.com

11

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| TAMARA CAPUTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1214 |
| | ) | |
| LUTHERAN SOCIAL SERVICES OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## JURY DEMAND

Plaintiff TAMARA CAPUTO demands a trial by jury of all issues raised in the foregoing pleadings that are so triable.


Respectfully submitted,

TAMARA CAPUTO,
Plaintiff

BY:    /s/ Melinda L. Mannlein
One of the Attorneys for Plaintiff


Julie L. Galassi, Esq., Bar No. 6198035
Melinda L. Mannlein, Esq., Bar No. 6288382
Bryan S. Lowe, Esq., Bar No. 6342267
Hasselberg, Rock, Bell & Kuppler, LLP
4600 N. Brandywine Drive, Suite 200
Peoria, Illinois 61614-5591
Telephone:   (309) 688-9400
Facsimile:   (309) 688-9430
Email:       jgalassi@hrbklaw.com
             mmannlein@hrbklaw.com
             blowe@hrbklaw.com

12