UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TAMARA L. CAPUTO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-cv-01214-JES |
| | ) |
| LUTHERAN SOCIAL SERVICES OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION**

This matter is before the Court on the Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7), supported by a Memorandum. Doc. 8 (collectively, the "Motion"). Plaintiff filed a Response (Doc. 9), supported by a Memorandum. Doc. 10 (collectively, the "Response"). Defendant filed a Reply. Doc. 12.[1] For the following reasons, the Motion is DENIED in its entirety.

**Background**

The following facts are taken from Plaintiff's Amended Complaint (Doc. 2),[2] which the Court accepts as true for the purposes of a motion to dismiss. *Fehlman v. Mankowski,* 74 F.4th 872, 874 (7th Cir. 2023).[3]

---

[1] Defendant initially filed a Motion for Leave to File a Reply Brief (Doc. 11), which was granted by the Court. *See* Text Order Dated September 18, 2023.

[2] Plaintiff's initial Complaint was filed on June 3, 2023. *See* Doc. 1. Her Amended Complaint was filed on June 23, 2023. *See* Doc. 2. Thus, the amendment was timely. *See* Fed. R. Civ. P. 15(a)(1)(A).

[3] Of relevance here, Plaintiff attempts to plead new facts in her Response. For example, she alleges new facts arising from the Equal Opportunity Employment Commission's ("EEOC") investigation into Defendant's alleged conduct, as included in the "Response to Respondent's Position Statement." Doc. 10 at 11. But, Plaintiff has not proffered this document into the record. And, Plaintiff "may not supplement or amend h[er] complaint by presenting new facts or theories in h[er] briefing in opposition to a motion to dismiss." *Duffy v. Ticketreserve, Inc.*, 722 F. Supp.

1

Plaintiff Tamara L. Caputo was hired as a case worker supervisor for Lutheran Social Services of Illinois ("Defendant" or "Lutheran"), an Illinois Not-For-Profit Corporation. Doc. 2 at 2. Prior to commencing employment, Caputo disclosed to Lutheran that she has Ehlers-Danlos Syndrome, in which her body does not produce collagen and can lead to injury, long healing times, or improper healing. *Id.* The disclosures were made to Lutheran employees who left their employment before Caputo's start date (*i.e.*, the week of August 10, 2020). *Id.*

Caputo also tore her Achilles tendon in March of 2020, and, at times, was required to wear a cast which prevented her from driving. *Id.* The supervisor position for which Caputo was hired did not require her to drive to foster homes, contrary to the duties of a case worker. *Id.* Caputo was expected to work from home 70% of the time, with the remaining 30% of the workweek spent at the office. *Id.* Lutheran assured Caputo that it would provide her with a driver as needed. *Id.*

During Caputo's first week on the job, Director Parry, one of Caputo's supervisors, tasked her with investigating a "Foster Parent Hot Line" report concerning a caseworker named "Jane." *Id.* at 3. Jane's alleged misconduct included instances of removing children from homes without cause, using profanity with various Lutheran clients, threatening foster parents, and suggesting on social media that she collects "a full wage while doing none of the work their job required." *Id.* Caputo was unfamiliar with Jane, the relevant Illinois regulations, and Lutheran office policies, as she had only just moved from Washington State and was not yet licensed in Illinois. *Id.* As of August 17, 2020, Director Parry instructed Caputo to work remotely for two weeks except for Friday mornings so as to focus on training and licensure, and he also indicated that she should let

---

2d 977, 990 (N.D. Ill. 2010) (citing *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir.2009) in turn citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1103 (7th Cir. 1984)). Accordingly, the Court will not consider any new facts presented solely in Plaintiff's Response.

the "office slide." *Id.* at 5. Furthermore, Director Parry acknowledged the validity of the complaints made against Jane. *Id.* at 4.

Jane responded to the investigation by harassing Caputo. *Id.* Caputo reported the behavior to Director Parry and Human Resources ("HR") Director Pearce, but no action was taken against Jane. *Id.* Jane continued to harass Caputo, and Caputo provided copies of the abusive communications (*e.g.*, texts and emails) to HR. *Id.* at 5. But, HR again took no action. *Id.*

Jane's mistreatment of Caputo continued. Jane organized a weekly "Bitch Session" for all non-supervisory employees to complain about Caputo. *Id.* Jane turned in a false complaint indicating that Caputo's Achilles injury was fraudulent. *Id.* As a result, Director Pearce demanded that Caputo submit proof of her medical condition and the injury. *Id.* Despite Caputo promptly providing such proof, she was issued a written warning. *Id.* at 5-6. And, Jane and several other caseworkers "refused to turn in time sheets and assignments for new cases," so Director Parry ordered Caputo to do the work of those caseworkers, even though Caputo was "medically restricted from driving." *Id.* at 5. Jane's performance issues remained unchecked. *Id.* at 5-6.

All the while, Caputo was denied access to certain computer programs and did not receive computer access until November 2020, yet, she was reported for failing to perform her job duties, some of which, incidentally, required computer access. *Id.* at 6. And, although Lutheran approved Caputo's remote work in accordance with their COVID-19 policy and Director Parry previously instructed Caputo to limit her time at the office to Friday mornings, Caputo "was written up for not being in the office enough." *Id.* Additionally, Caputo was told to cease sending reminders to staff regarding Lutheran's COVID-19 policies, but she was issued a written warning for failing to support those same policies. *Id.* at 7. Then, Caputo was suspended due to allegations (which Caputo asserts are false) that she: 1) violated the COVID-19 policy; 2) failed to perform her job

3

duties (*e.g.*, communicating with staff about Lutheran's COVID policies); and 3) neglected to supervise Jane. *Id.*

During this time, staff members reported to Directors Parry and Pearce that several Lutheran employees were making offensive comments about Caputo and her disability. *Id.* And, while Caputo was attending a medical appointment of which Jane and her cohort were aware, Caputo was called and/or texted by those individuals approximately 40 times. *Id.* The individuals then complained about Caputo's lack of responsiveness to Director Parry, Director Pearce, and the new and untrained hire, Director Stacey Amy. *Id.* Even though Caputo answered as soon as her appointment finished, she was later suspended for not responding during the appointment. *Id.*

Moreover, at a training that Director Pearce was conducting for supervisors, he did not realize that Caputo was in attendance, and so he stated, *id* at 6 (emphasis added): "[W]hen an applicant or employee uses the words, 'disability accommodations' you must get HR and Legal involved immediately. All supervisors are responsible to make sure they hire people who can do the job. ***Don't hire someone, for example, who can't drive with a broken foot when the job requires driving***."

Shortly thereafter, Caputo was demoted to case worker, a position that required her to drive. *Id.* at 8. But, Caputo could not drive due to the cast on her foot. *Id.* Caputo was replaced, effectively and figuratively, by Director Amy. As part of Caputo's demotion, other caseworkers' files were transferred to her, and as a result, she was responsible for 23 cases whereas other caseworkers only had 15 cases. *Id.* During her employment, Caputo requested reasonable accommodations on two occasions. *Id.* at 10. However, Lutheran did not provide a driver to Caputo so that she could make home visits. *Id.* at 8.

4

Caputo resigned on December 1, 2020. *Id.* After her resignation, Caputo suffered three cardiac episodes in December 2020, of which she attributes, in part, "to the severe stress she endured at Lutheran." *Id.*

On June 8, 2021, Caputo cross-filed a charge of discrimination under the Americans with Disabilities Act of 1990 ("ADA") with the Illinois Department of Human Rights and the EEOC. Doc. 8 at 15-17 (the "Charge").[4] The Charge indicates in pertinent part, *id.* at 15:

> DISCRIMINATION BASED ON *(Check appropriate box(es).)*
> ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
> ☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
> ☐ OTHER *(Specify)*
>
> DATE(S) DISCRIMINATION TOOK PLACE
> Earliest: 08-10-2020   Latest: 12-01-2020
> ☐ CONTINUING ACTION
>
> THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:
> I was hired by Respondent on or about August 10, 2020. My most recent position was Supervisor. Throughout my employment, Respondent was aware of my disability. I requested reasonable accommodations, which were not provided. During my employment, I was subjected to disability-based harassment, and my disability was mocked and used as a an example during a training session. I was disciplined and ultimately demoted. On or about December 1, 2020, I was constructively discharged.
>
> I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

Caputo then received a "Right to Sue letter" on March 7, 2023. Doc. 2 at 2. Several months later, on June 3, 2023, Plaintiff filed suit. *See* Doc. 1.

---

[4] A Rule 12(b)(6) motion "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (citing Fed. R. Civ. P. 10(c)). The exception for documents referenced in and central to a complaint is a "narrow" one, "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

Defendant submitted the Charge as an exhibit to its Motion and Plaintiff does not contest the authenticity of the exhibit. The Charge is critical to the Amended Complaint. *See Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994) ("To determine the proper scope of [plaintiff's] Title VII complaint, however, the court must consider the accusations made in the EEOC charge."). In addition, the "charge is a public document and, therefore, the court may take judicial notice of the charge." *Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (citing *Pierce v. Ill. Dep't of Human Servs.*, 128 Fed. Appx. 534, 535 (7th Cir. 2005)). The Court finds, therefore, that it is appropriate to consider the Charge in ruling on the motion to dismiss.

Caputo asserts three claims, all pursuant to the ADA: failure to accommodate (Count I); disparate treatment (Count II); and retaliation (Count III). *See* Doc. 2. She seeks attorney's fees, costs, back pay, and other just relief the Court deems proper. *Id.* The Court now turns to the Motion, in which Lutheran moves to dismiss Counts I and III of the Amended Complaint.[5]

## Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In reviewing the motion, the Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the nonmovant. *See Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610, 612 (7th Cir. 2019). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## Discussion

*Failure to Accommodate (Count I)*

The ADA prohibits employers from discriminating against a "qualified individual on the basis of disability." *See* 42 U.S.C. § 12112(a). Under the ADA, a disability is a physical or mental

---

[5] Defendant has otherwise answered the suit and does not move to dismiss Count II. *See* Doc. 6 (Answer).

impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" constitutes discrimination under the ADA, unless the employer can demonstrate that the accommodation would impose an "undue hardship." *See* 42 U.S.C. § 12112(b)(5)(A).

"To prevail on her failure-to-accommodate claim, [Plaintiff] must show that: "'(1) [she] was a qualified individual with a disability; (2) the [Defendant] was aware of the disability; and (3) the [Defendant] failed to reasonably accommodate the disability.'" *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 801-02 (7th Cir. 2023) (alterations edited, in part) (quoting *Conners v. Wilkie*, 984 F.3d 1255, 1260–61 (7th Cir. 2021)).

Significantly, Defendant does not move to dismiss Count I on the basis that any above-noted element necessary to establish a failure to accommodate claim is not present.[6] Rather, the focal point of Defendant's argument, which is emphatically reiterated in the Reply, is that Plaintiff has failed to allege facts sufficient to show that she **requested** a reasonable accommodation. *See* Doc. 8 at 6-7; Doc. 12 at 1-4. In Response, Plaintiff highlights that, in her Amended Complaint, she "alleged she requested a reasonable accommodation twice." Doc. 10 at 8.

It is true that "'the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches...'" *Preddie v. Bartholomew Consolidated School Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) (quoting *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 608 (7th Cir. 2012) in turn quoting *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894,

---

[6] Although Defendant does not argue for dismissal of Count I on any of the prima facie elements of failure to accommodate, in the Answer, Defendant appears to indicate that it is unaware of Plaintiff's alleged disability. *See* Doc. 6 at 2.

899 (7th Cir. 2000)). But, there are exceptions to this general rule, and "[o]nce the employer has been put on notice, the employer must take reasonable steps to accommodate the employee's disability." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013) (quotation omitted).

A review of the Amended Complaint clearly shows that Plaintiff alleged that she "engaged in statutorily protected conduct in requesting two reasonable accommodations." Doc. 2 at 10. It is of no mind that the relevant allegation is nestled under the heading for Plaintiff's retaliation claim, *id.*, rather than the section covering her factual allegations. *Id.* at 2-8; *see Hulet v. Informis Health Solutions, LLC*, CRN-16-2778, 2017 WL 11716070, at *4 (N.D. Ill. Jan. 11, 2017) ("'District judges must heed the message of Rule 8: the pleading stage is not the occasion for technicalities.'") (quoting *Luckett v. Rent-A-Center, Inc.*, 53 F.3d 871, 873 (7th Cir. 1995)). Furthermore, it is clear from the Charge that Plaintiff requested reasonable accommodations. *See* Doc. 8 at 15.

Defendant also suggests that it is not enough for Plaintiff to plead that she requested two accommodations, rather, she must also allege "when she did so, what accommodation she requested, and to whom she made the request." Doc. 8 at 6 (string citation omitted).[7] But, the essence of Plaintiff's requested accommodations is not so amorphous as to provide little to no notice to Defendant of the thrust of her claim.

---

[7] The Court has reviewed the following cases cited by Defendant, but does not find the reasoning contained within these cases to perfectly comport to the facts here, or to otherwise justify granting Defendant's Motion as to Count I: *Peters v. Mundelein Consol. High Sch. Dist. No. 120*, RRP-21-0336, 2022 WL 393572, at *4 (N.D. Ill. Feb. 9, 2022); *Schneckenburger v. Securitas Sec. Servs.*, JES-16-1018, 2016 WL 2642952, at *3 (C.D. Ill. May 9, 2016); *Lasisi v. Follett Higher Educ. Grp., Inc*, RAG-13-5293, 2014 WL 582186, at *2 (N.D. Ill. Feb. 14, 2014); *Butler v. E. Lake Mgmt. Grp. Inc.*, RMD-10-6652, 2013 WL 2112032, at *2 (N.D. Ill. May 15, 2013); *Mattern v. Panduit Corp.*, JWD-11-984, 2011 WL 4889091, *7 (N.D. Ill. Oct.11, 2011). Nevertheless, the Court considers these cases as persuasive authority to the extent they offer relevant analysis.

The Seventh Circuit's recent decision in *Brown v. Meisner*, ___ F.4th ___2023 WL 5498739 (7th Cir. Aug. 25, 2023), is instructive.[8] In that case, the plaintiff, a prisoner, "alleged that after he fell from his top bunk at Oshkosh, he asked the prison for 'an ADA reasonable accommodation' to mitigate his 'severe pain' and to prevent 'further harm' to his disabled knee." *Id.* at 2. He also alleged that "prison officials 'kept him in imminent danger by denying him reasonable accommodations.'" *Id.* The court concluded that "[t]hose allegations gave fair notice to prison officials that [plaintiff] was suing for failing to accommodate his disabling knee condition at Oshkosh." *Id.* (citing *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012)).

Of relevance here, the defendants in *Brown*, like the Defendant here, argued that the plaintiff "failed to state an ADA claim because he did not specify in his amended complaint the…specific accommodation he requested." *Brown*, 2023 WL 5498739 at 2. The Seventh Circuit rejected this argument, and stated, *id.* (emphasis added) (full citation added) (footnote omitted):

> ***No rule of law required [plaintiff] to identify a particular accommodation in his complaint***. See *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Nor would such a pleading requirement make sense for an ADA claim. A covered entity has considerable flexibility in deciding about how a disability will be accommodated. E.g., *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (citation omitted).[ ]

So too has Plaintiff, in the case at bar, alleged facts sufficient to put Defendant on notice as to the core of her claim of failure to accommodate. Plaintiff has alleged that Defendant was

---

[8] The Court recognizes that the pleadings of *pro se* litigants, such as the Plaintiff in *Brown*, are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In contrast, the Plaintiff here is not *pro se*. However, "[p]ro se status does not serve as a license to ignore the Federal Rules of Civil Procedure…" *Watford v. Harner*, SPG-18-1313, 2022 WL 579490, at *5 (S.D. Ill. Feb. 25, 2022) (citing *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998)); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven pro se litigants must follow rules of civil procedure."). And, of particular relevance here, the Supreme Court has stated that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). Thus, the Court appropriately looks to *Brown* for guidance in determining the appropriate pleading requirement for stating a claim of failure to accommodate.

aware, from the time she started work, that her disability prevented her from driving and that she would need to be provided a driver if she was required to leave the office. *See* Doc. 2 at 2.[9] As noted, Plaintiff also alleged that Defendant's HR Director stated at a training session for supervisors that "when an applicant or employee uses the words, 'disability accommodations' you must get HR and Legal involved immediately. All supervisors are responsible to make sure they hire people who can do the job. Don't hire someone, for example, who can't drive with a broken foot when the job requires driving." *Id.* at 6. Most significantly, in paragraph 35 of the Amended Complaint, Plaintiff alleged that she "was demoted from county supervisor to case worker, a position that required her to drive, which she could not do with a cast on her foot," and in the very next paragraph Plaintiff alleged that Defendant "refused to furnish a driver for Caputo to make home visits." *Id.* at 8; *see also id.* ("Lutheran failed to accommodate Caputo'[sic] disability.").

The "liberal notice pleading regime" at the motion to dismiss stage "is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (citation and quotation omitted). In this way, Plaintiff must "show through [her] allegations that it is plausible, rather than merely speculative, that [she is] entitled to relief." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (citations and internal quotation omitted). And, Plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Hernandez v. Illinois Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023) (citation and quotation marks omitted). "This low bar asks that [Plaintiff] allege 'only enough facts to nudge[] their claims across the line from conceivable to plausible.'" *Russell v. Zimmer, Inc.*, ___ F.4th ___, 2023 WL 6151720, at *5 (7th

---

[9] Viewing all reasonable inferences in Plaintiff's favor, it appears as though Caputo was intermittently required to wear a cast to rehabilitate her Achilles tear, even eight months after the injury, due to healing complications rooted in Ehlers-Danlos Syndrome.

Cir. 2023 Sept. 21, 2023) (quoting *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551 (7th Cir. 2023) (internal quotation omitted). Plaintiff has satisfied this less-than-onerous standard.[10]

Here, Plaintiff's allegations concerning her injury, her job duties, her communication with Defendant, and the type of accommodation that she would need to perform her work all come together to weave a tapestry sufficient to provide Defendant with fair notice of her claim. Plaintiff was not required to provide further details or additional nuances regarding her ***request*** for reasonable accommodations, contrary to Defendant's assertion. *See E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 779 (7th Cir. 2007) (citation omitted) ("Most details are more efficiently learned through the flexible discovery process").

In light of the foregoing, Defendant's Motion as to Count I is DENIED.

*Retaliation (Count III)*

To make out a retaliation claim under the ADA, a plaintiff must exhaust her administrative remedies, which includes filing an EEOC charge as to that claim. *See Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018). Then, upon receiving a right to sue letter, a plaintiff is typically limited to bringing a federal court action as to those claims explicitly contained within the charge. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000). But, a plaintiff may also bring suit as to a claim that is (1) "reasonably related to one of the EEOC charges," and (2) "can be expected to develop from an investigation into the charges actually raised," as such a claim will be considered sufficiently exhausted. *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)); *see also Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal quotation marks omitted). To satisfy the first prong, the "claims must at least describe the same conduct and

---

[10] In contrast to Illinois' fact pleading standard, "[i]n federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories." *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006).

implicate the same individuals." *See McHale v. McDonough*, 41 F.4th 866, 870 (7th Cir. 2022) (citing *Teal v. Potter*, 559 F.3d 687, 692 (7th Cir. 2009)). The second prong requires the Court to speculate "as to what the EEOC might or might not discover in the course of an investigation" based on the EEOC complaint and other written allegations from the administrative proceedings. *Id.* (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

Defendant argues for dismissal of Count III primarily on the basis that Plaintiff's Charge did not indicate retaliation, and therefore, she failed to exhaust her administrative remedies. Specifically, Defendant avers that Plaintiff did not check the box for retaliation in the Charge or even mention retaliation in the Charge, nor did Plaintiff adequately specify her allegations in the body of the Charge. *See* Doc. 8 at 7-11; Doc. 12 at 5-8.[11] In the Response, Plaintiff argues that the Charge is sufficiently detailed and even though the retaliation box is not checked, as the information within the Charge reasonably relates to her retaliation claim. Doc. 10 at 10-15.

While the Court agrees that the Charge did not explicitly allege "retaliation," that alone is not determinative of the exhaustion question. *See, e.g.*, *Medina v. J.P. Morgan Inv. Mgmt., Inc.*, MSS-15-11611, 2016 WL 2958613, at *3 (N.D. Ill. May 23, 2016) ("Though he did not check the box for 'retaliation,' [the plaintiff] did describe facts that could suggest he was fired for engaging in protected activity."). Instead, the exhaustion question turns on whether Plaintiff's retaliation claim falls within the scope of her allegations in the Charge.[12] In undertaking this inquiry, the

---

[11] Lutheran also seems to suggest that Plaintiff was required to "allege that she complained to [Defendant] about discriminatory activity or that she was harassed, demoted, or constructively terminated because she complained." Doc. 8 at 10. However, complaining about discriminatory activity to one's employer is not the only basis for a retaliation claim. Indeed, statutorily protected activity can also include filing a charge with the EEOC, or, as Plaintiff did here, requesting reasonable accommodations.

[12] Defendant appears to argue that by virtue of Plaintiff checking the discrimination box of the Charge, and not including the word "retaliation" in the Charge, the Charge cannot cover

Court is mindful that because "most EEOC charges are completed by laypersons rather than by lawyers, a [] plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Thus, Plaintiff's retaliation claim should not be dismissed "simply because [the Charge] failed to incorporate the correct legal terminology," and given "the liberal pleading standard applied to EEOC charges," her retaliation claim will survive dismissal under Rule 12(b)(6) so long as "a fair reading of the [Charge's] narrative would support an inference of retaliation." *Macchia v. Loyola Univ. Med. Ctr.*, DHC-04-5049, 2004 WL 2392201, at *5 (N.D. Ill. Oct. 25, 2004) (citations omitted).

In the Charge, Plaintiff alleges that she engaged in a protected activity—*i.e.*, requesting reasonable accommodations for her disability—and two subsequent adverse employment actions—her demotion and constructive discharge. Doc. 8 at 15.[13] Likewise, Plaintiff alleges in the Amended Complaint that she was retaliated against, vis-à-vis her demotion and constructive

---

retaliation because the Seventh Circuit has observed that "[n]ormally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). However, the Seventh Circuit's use of the word ***normally*** indicates that this is not a *per se* rule. And, Defendant's argument appears to operate under the incorrect assumption that the Charge must include a key word or phrase to justify connecting its content to Plaintiff's retaliation claim within the Amended Complaint. *See Mudgett v. Centegra Health System. Inc*., JHL-04-6212, 2006 WL 1806390, at *4-5 (N.D. Ill. June 27, 2006) (concluding that plaintiff's EEOC charge did not need to include "magic words" specifying a particular cause of action).

[13] The Charge does not specifically state that the adverse employment actions were subsequent to Plaintiff's request for reasonable accommodations. *See* Doc. 8 at 15. However, the Court notes that Plaintiff's allegation of demotion and constructive discharge appeared two sentences ***after*** she alleged that she requested reasonable accommodations. *Id.* Further, constructive discharge cannot possibly arise before requesting reasonable accommodations. And, constructive discharge is a well-settled adverse employment action. *See Kinney v. St. Mary's Health, Inc*., 76 F.4th 635, 648 (7th Cir. 2023). Thus, viewing the inferences in Plaintiff's favor as the nonmovant, the Court concludes that the Charge alleges two adverse employment actions that resulted from her statutorily protected activity.

discharge, for the protected activity of requesting an ADA accommodation. Doc. 2 at 10-11. Further, the Amended Complaint and the Charge both describe the same retaliatory conduct and appear to implicate the same individuals. It should come as no surprise that district courts in the Seventh Circuit have found ADA retaliation claims to be like or reasonably related to allegations substantially similar to those Plaintiff made in the Charge. *See, e.g.*, *Cuffy v. Illinois Secretary of State*, ARW-21-05722, 2023 WL 5956996, at *6 (N.D. Ill. Sept. 13, 2023) (concluding that plaintiff's retaliation claim in her complaint, which indicated that she "requested a reasonable accommodation ... and, in retaliation, was terminated just weeks after her request" reasonably related to her charge in which the plaintiff alleged that she "requested a reasonable accommodation which was not provided [and] [o]n or about August 24, 2020, [she] was discharged"); *Hua v. Arthur J. Gallagher & Co.*, LCJ-20-6921, 2023 WL 3763527, at *13 (N.D. Ill. June 1, 2023) (holding that the plaintiff's EEOC charge, which stated that plaintiff was discriminated against on the basis of a workload increase and was later discharged, reasonably related to a claim of retaliation as the EEOC would discover that plaintiff's requested accommodation to work from home was denied, thus giving way to an investigation of retaliatory conduct); *Alibuxsh v. Extractor Corp.*, JJT-19-03032, 2020 WL 10937721, at *2 (N.D. Ill. Dec. 18, 2020) ("[I]n insisting that [the plaintiff] has not exhausted his ADA retaliation claim, [the defendant] conveniently overlooks simple but important language: [The plaintiff's] attestation in his EEOC charge that he requested an accommodation, and, seemingly as a result, was terminated...") (internal quotation marks omitted); *Lahey v. Ill. Bell Tel. Co.*, JFH-13-8252, 2014 WL 1884446, at *3 (N.D. Ill. May 9, 2014) (concluding that the plaintiff's EEOC charge was reasonably related to the complaint's

retaliation claim as "both allege that [the plaintiff] requested accommodation from [the defendant] and was denied such accommodation" and that the plaintiff "was fired shortly thereafter").[14]

Accordingly, the Court finds Plaintiff's retaliation claim falls within the ambit of the Charge, and the Court declines to dismiss Count III on exhaustion grounds. Based on the above analysis, the Court also concludes the Charge was sufficiently detailed to put both the Defendant and the EEOC on notice as to Plaintiff's retaliation claim. *See Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (The exhaustion requirement "serves two purposes: affording the EEOC the opportunity to settle the dispute between the employee and employer, and putting the employer on notice of the charges against it.").

The Court, having determined that the alleged failures as to the Charge do not warrant dismissal of Count III, now turns to the limited briefing in which Defendant suggests that Plaintiff has failed to adequately plead a retaliation claim. *See* Doc. 8 at 11-12; Doc. 12 at 8-9.

"To establish a retaliation claim, [Plaintiff] must demonstrate that she engaged in protected activity, that she suffered an adverse action, and that there is a causal connection between the two.'" *Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quoting *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018)).

In particular, Defendant focuses on whether Plaintiff has alleged that she engaged in protected activity. Defendant argues that "the nature of Plaintiff's 'requested accommodations' are not identified at all, and her new allegation of 'retaliation' is wholly conclusory, and thus,

---

[14] The Court recognizes that Defendant has cited to several district court cases for the proposition that the allegations in the Charge do not reasonably relate to Plaintiff's retaliation claim. These cases are inapt, as the plaintiffs in the following cases, unlike the Plaintiff here, did not allege in their respective charges that they engaged in any protected activity: *Woods v. S. Ill. Univ. Carbondale*, DRH-15-597, 2016 WL 4690407, at *3 (S.D. Ill. Sept. 7, 2016); *Pelt v. Roosevelt University*, MEA-13-3953, 2014 WL 1228418, at *5 (N.D. Ill. Mar. 25, 2014); *Hillman v. Costco Wholesale Corp.*, GF-12-6012, 2014 WL 3500131, at *9 (N.D. Ill. July 14, 2014).

insufficient to withstand a motion to dismiss." Doc. 8 at 11.[15] Plaintiff avers that her allegation that she requested reasonable accommodations is a fact, not a conclusion. *See* Doc. 10 at 15-16. For the same reasons discussed *supra* in connection with Defendant's Motion as to Count I, the Court finds that Plaintiff's allegation that she requested reasonable accommodations is sufficiently detailed, not wholly conclusory, and thus capable of forming the basis for her claim of retaliation.

Based on the foregoing, Defendant's Motion as to Count III is DENIED.

### Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss (Doc. 7) is DENIED in its entirety.


Entered on this 29th day of September 2023.


*/s/ James E. Shadid*
UNITED STATES DISTRICT JUDGE

---

[15] The parties do not address whether Plaintiff sufficiently alleged an adverse action or causal connection between the alleged statutorily protected activity and the alleged adverse action.